**CHARTER RISK RETENTION GROUP INSURANCE COMPANY, Plaintiff,**

**v.**

**David W. ROLKA, Joseph Rhodes, Jr., and Wendell F. Holland, Commissioners, Public Utility Commission, Defendants.**

**Civ. A. No. 1:CV-92-236.**

United States District Court, M.D. Pennsylvania.

June 11, 1992.

M. Hannah Leavitt, Andrew S. Gordon, Buchanan Ingersoll P.C., Harrisburg, Pa., for plaintiff.

H. Kirk House, John F. Povilaitis, John E. Herzog, Harrisburg, Pa., for defendants.

Philip C. Olsson, David L. Durkin, Olsson, Frank & Weeda, P.C., Washington, D.C., amicus National Risk Retention Ass'n.

## MEMORANDUM

CALDWELL, District Judge.

### I.  *Introduction*

Plaintiff, Charter Risk Retention Group Insurance Company, seeks a declaratory judgment that defendants' enforcement of section 512 of the Pennsylvania Public Utility Code (the Code), 66 Pa.C.S. § 512, and certain regulations of the Pennsylvania Public Utility Commission (the Commission), 52 Pa.Code § 32.11, is unconstitutional and in violation of the Liability Risk Retention Act of 1986 (the Act), 15 U.S.C. § 3901, *et seq.*  Defendant commissioners, David W. Rolka, Joseph Rhodes, Jr., and Wendell F. Holland, have filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and failure to state a claim pursuant to Fed. R.Civ.P. 12(b)(6).  An amicus curiae brief has been filed in opposition to defendants' motion by the National Risk Retention Association.

### II.  *Background*

Plaintiff is a risk retention group and an insurance company licensed in Nebraska. It is registered with Pennsylvania's Insurance Commissioner, but is not licensed in the Commonwealth.[1]  During a public

---

1. According to the amicus, "Charter Risk has filed with the Insurance Department of the Commonwealth its business plan of operation and all revisions thereto and its annual financial statements as required by 15 U.S.C. § 3902(d)(2) and (3).  Charter Risk has designated the Commonwealth's Insurance Commissioner as its agent for service of process as contemplated by 15 U.S.C. § 3902(a)(1)(D).  The Insurance Commissioner of the Commonwealth has apparently never sought to initiate an examination of Charter Risk 'to determine the group's financial condition' as authorized by 15 U.S.C. § 3902(a)(1)(E) or to allege that Charter

meeting on October 17, 1991, the Commission determined that plaintiff "does not possess a certificate of authority issued by the Insurance Department and *thus* is not an insurer authorized to do business in this Commonwealth." (Order to Show Cause, Exhibit 1, Defendant's Brief) (emphasis added). On that ground, the Commission subsequently issued orders to show cause against sixteen limousine companies insured by plaintiff. The orders directed the companies to establish why they should not be required to obtain insurance coverage by an insurer licensed in Pennsylvania. A showing that the companies had "acceptable" insurance was required within a designated period or they would be "subject to suspension or revocation proceedings," which would force them to obtain insurance from a licensed insurer. *Id.*

Defendants, acting as commissioners for the Commission, based their decision upon their interpretation of section 512 of the Code and the Commission's regulations, 52 Pa.Code § 32.11(a) and (b), which require that private carrier utilities obtain insurance from an insurer "authorized to do business within the Commonwealth." Defendants determined that plaintiff's insurance plan did not comply for purposes of demonstrating financial responsibility, because it is not licensed in Pennsylvania and *for that reason* is not "authorized to do business in the Commonwealth." *Id.*

The complaint alleges that the defendants' action is in violation of section 3902(a)(1) through (4) of the Act, including its anti-discrimination provisions, which preempts state insurance laws that require risk retention groups to "obtain authorization under differing standards before being permitted to do business in a given state." (Complaint at ¶ 17). The complaint further avers that the Act "authorized duly constituted groups to offer its members liability insurance coverage in every state without

having to obtain a license from each state." (Complaint at ¶ 18). The Act provides:

> Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would:
>
> (1) make unlawful, or regulate directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group . . .
>
> .    .    .    .    .
>
> (4) otherwise discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.

15 U.S.C. § 3902(a)(1) and (4). Plaintiff claims that it and its members will suffer irreparable harm to their business interests and ability to operate in Pennsylvania unless defendants are enjoined from enforcing the orders to show cause and the state laws as interpreted by them.

III. *Discussion*

Defendants contend that the Act does not apply to this action and, accordingly, plaintiff may not avail itself of 28 U.S.C. § 1331 or 1337(a) as there is no federal question jurisdiction.[2] They argue further that plaintiff's claim against them in their individual capacities is in effect a claim against the Commission which is barred by the eleventh amendment. Finally, they aver that the complaint fails to state a claim pursuant to 42 U.S.C. § 1983.

■ With regard to subject matter jurisdiction, defendants contend that declaratory actions filed pursuant to 28 U.S.C. § 2201 must have some basis for federal jurisdiction other than the request for declaratory relief itself. *See, Schilling v.*

Risk is 'in hazardous financial condition or is financially impaired,' as would be permitted under 15 U.S.C. § 3902(e)(2)." (Amicus Brief, at 4).

**2.** Plaintiff asserts jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1343(a)(3) and (4),

that venue is proper pursuant to 28 U.S.C. § 1391(a) and (b), and that it is authorized to bring the present action by Article VI, cl. 2 of the United States Constitution, 42 U.S.C. § 1983, and 28 U.S.C. § 2201.

*Rogers,* 363 U.S. 666, 677, 80 S.Ct. 1288, 1295–96, 4 L.Ed.2d 1478 (1960); *Getty Oil Co. (Eastern Operations), Inc. v. Ruckelshaus,* 467 F.2d 349, 356 (3d Cir.1972). Defendants contend, therefore, that the ultimate question in this matter concerns whether plaintiff is an "authorized insurer," which is strictly a question of state law. We disagree. The crux of this matter is whether defendants interpretation of section 512 and 52 Pa.Code § 32.11 has the indirect effect of precluding risk retention groups from operating without impediments in Pennsylvania, which is, as indicated, a violation of federal law.[3]

Defendants argue that the orders to show cause against the limousine companies were issued out of concern that certain motor carrier utilities were covered by insurers that were "non-admitted" or not licensed in Pennsylvania. Defendants allege that the orders do not cancel the recipients' certificates of insurance and do not direct that they immediately terminate their policies and switch to licensed insurance companies. In sum, defendants argue that the orders did not single out risk retention groups in general, but were directed at any non-licensed insurer, and that plaintiff happened to be the insurer involved. Therefore, they contend that the Commission's action does not prohibit plaintiff from offering insurance in Pennsylvania, and thus, is not in conflict with the Act.

Plaintiff alleges that pursuant to the Act it has the right "to do business" and "offer insurance" without the interference of state regulation. The amicus and plaintiff have established that the Act preempts state law which obstructs the ability of risk retention groups to operate on a multi-state basis, even though they are only licensed in one state.[4] On that ground, plaintiff contends that the orders directing plaintiff's members to show cause why they should not secure coverage from a licensed insurer indirectly impedes plaintiff's ability to provide them coverage and forces them to obtain insurance elsewhere. Plaintiff urges that these orders, and defendants' interpretation of the state laws in question, directly conflict with the intent of Congress to enable risk retention groups to provide insurance for their members on a nationwide level.

Defendants counter that the Commission's action is expressly authorized by the Act itself. They rely almost exclusively upon section 3905(d) of the Act which provides:

> Subject to the provisions of section 3(a)(4) [15 U.S.C. § 3902(a)(4) ] relating to discrimination, *nothing in this Act ... shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility* where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. *Such means may include or exclude insurance coverage obtained from an admitted insurance company,*

---

**3.** Section 512 provides:

> ... all motor carriers of passengers ... shall cover each and every vehicle, transporting such passengers, with a public liability insurance policy or a surety bond issued by an insurance carrier or a bonding company *authorized to do business in this Commonwealth....*

66 Pa.C.S. § 512 (emphasis added). The Commission's regulations pertaining to passenger carrier insurance provides:

> ... no certificate or permit will issue, or remain in force, ... until there has been filed with and approved by the Commission a certificate of insurance *by an insurer authorized to do business in this Commonwealth.*

52 Pa.Code § 32.11(a) (emphasis added). The language "authorized to do business" does not specify that state licensure is required and de-

fendants do not point to any other section which does. Thus, authorization for risk retention groups arguably may be gleaned from the Act's preemption provisions.

**4.** *See, Home Warranty Corp. v. Caldwell,* 777 F.2d 1455, 1472 (11th Cir.1985) ("once a risk retention group was approved by any particular state, that state's minimum capitalization requirements and other requirements enacted under state law for the protection of state citizens would be binding upon the risk retention group on a national basis. Sufficient financial strength to support risks assumed in one state would suffice for underwriting risks nationwide. Functioning thus as an index of public accountability, this qualification in a single state was to be a license binding all states for the operation of risk retention groups nationwide").

an excess lines company, a risk retention group, or any other source regardless of whether coverage is obtained directly from an insurance company or through a broker, agent, purchasing group, or any other person.

15 U.S.C. § 3905(d) (emphasis added).

Defendants overlook the first sentence which states "[s]ubject to the provisions of section 3(a)(4)," i.e., that states may not discriminate against risk retention groups or their members or otherwise directly or indirectly regulate their operation. To interpret section 3905(d) as defendants insist (thus, granting states unlimited discretion to dictate the means of demonstrating financial responsibility) would render meaningless the anti-discrimination provisions of Act. Rather, the two sections must be read together to properly construe the Act's meaning.

Nevertheless, defendants argue that "[c]learly, financial responsibility for the specially licensed activity of a passenger carrier utility is required to be demonstrated by the submission of a certificate of insurance by an insurer authorized to do business in the Commonwealth of Pennsylvania." (Defendants' Brief, at 7).[5] We agree that the Act authorizes states to require demonstration of financial responsibility for specially licensed activities, and plaintiff does not dispute that motor carriers must demonstrate this responsibility to receive a permit. However, the issue is whether risk retention groups may be deemed "not authorized" in light of the Act's preemption requirements.

Plaintiff argues that by categorizing risk retention groups as inappropriate or unacceptable for purposes of showing financial responsibility, defendants have indirectly regulated plaintiff's business by effectively compelling its members to obtain insurance elsewhere, in direct violation of the Act. Thus, the defendants' orders to show cause, which on their face presumptively designate plaintiff's coverage as an unacceptable plan for motor carriers, is arguably equivalent to an "order" that "regulate[s], directly or indirectly, the operation" or otherwise discriminates against risk retention groups. 15 U.S.C. § 3902(a)(1). Discrimination may be established simply on the ground that plaintiff's members are required to show cause why they should not be required to have acceptable insurance, which is not a burden placed on carriers who use licensed insurers and which may cause such members to seek insurance elsewhere, even if just to avoid this burden. We agree with this position.

While the orders to show cause do not cancel the carriers' certificate of insurance or immediately terminate their policies with plaintiff, such orders have already determined that plaintiff is not an authorized insurer in Pennsylvania, and plaintiff's members merely have an opportunity to demonstrate "why it should not be required to have an *acceptable* certificate of insurance filed by an insurer *which is* authorized to do business in this Commonwealth, *as evidenced by possession of a certificate of authority issued by the Insurance Department.*" Thus, as indicated, the central issue is whether duly constituted risk retention groups may be deemed "unacceptable" or unauthorized in the first instance. We agree with defendants that the Commission's action does not actually prohibit plaintiff from insuring motor carrier utilities in Pennsylvania. However, we find that the complaint states a claim whether the orders to show cause are discriminatory on their face and whether defendants' apparently unrebuttable presumption that risk retention groups are not authorized to do business in Pennsylvania violates the Act. Defendants even concede the conclusiveness of their position when they state "Charter Risk fails to recognize that it is only through an *authorized* insurance company that such coverage may be purchased by a common carrier in Pennsylvania" and that states are allowed to set standards *based upon this* presumption with regard to specially licensed activities. (Defendants' Reply Brief, at 4–5). Defendants do not dispute that the orders may

---

5. This assertion implies that plaintiff is not authorized to do business in Pennsylvania, which is precisely what plaintiff contends is contrary to the Act.

ultimately require plaintiff's members to acquire coverage by licensed insurer or suffer revocation proceedings.

We conclude that whether defendants' action is preempted by the Act involves the construction of a federal statute (including an interpretation of section 3905(d) as suggested by defendants), which is clearly a federal question.[6]

■ Defendants' second argument is that plaintiff has failed to state a claim that the Commission violated the anti-discrimination provisions of the Act. They contend that the orders to show cause were instituted against over one-hundred utilities which were not insured by a licensed insurer, and thus, "did not single out risk retention groups."[7] We disagree. Simply because an action pertains to groups other than plaintiff does not preclude a finding of discrimination if the action prevents risk retention groups in general from receiving the same privileges as other insurance companies. Of course, discrimination must be proven by plaintiff, but at this stage in the litigation the plaintiff has stated a viable claim.[8]

We turn now to whether plaintiff has stated a claim pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(a)(3) and (4). "[A] civil rights complaint under § 1983 must set forth with factual specificity the conduct of defendants alleged to have harmed the plaintiff." *Darr v. Wolfe*, 767 F.2d 79, 80 (3d Cir.1985) (citations omitted). The complaint must specify the conduct which violates the plaintiff's civil rights, "when and where that conduct occurred, and who was responsible ... [and] will be dismissed if it contains only vague and conclusory

allegations." *La Plant v. Frazier*, 564 F.Supp. 1095, 1097 (E.D.Pa.1983).

The individual defendants are charged with interpreting and enforcing the laws in question in a manner preempted by federal law. Defendants contend that the complaint does not specify when, where, and how they engaged in actions which deprived plaintiff of its rights, privileges, and immunities to justify relief under section 1983. We construe the complaint as alleging that the individual defendants, acting as commissioners during the public meeting of October 17, 1991, violated plaintiff's rights under the Act when they instituted the relevant orders to show cause. Defendant relies upon its earlier argument that no federal question is involved here, and any violation would concern plaintiff's state rights. As indicated, the allegation of preemption involves a federal question and thus plaintiff has stated a claim under section 1983.

■ Defendants' final argument in moving for dismissal is that the complaint fails to state claims against the defendants in their individual capacities and that any claims against the Commission are barred by the eleventh amendment. Defendants argue that plaintiff is attempting to impose liability on them simply because of their position with the Commission. Hence, in defendants' view, the plaintiff is really making a claim against the Commission. This argument must be rejected. Of course, the defendants have acted only in their capacity as commissioners and thus it could be argued that subjecting them to suit actually involves the Commission

---

**6.** We agree with defendants that section 3905(d) of the Act allows states to demand that its demonstration of financial responsibility *include or exclude* particular forms of insurance. However, the amicus' argument is well-taken that this provision means that should a *particular* risk retention group fail to meet conditions of financial responsibility, they may properly be excluded. Any other reading of this provision (such as that states may exclude risk retention groups *in general* as a means of financial responsibility) would allow states to discriminate against all risk retention groups and their members in violation of the anti-discrimination provisions of the Act.

**7.** The orders to show cause were directed not only against utilities insured by risk retention groups but against surplus line carriers, which also are not licensed in Pennsylvania.

**8.** Defendants contend that plaintiff is required to prove "purposeful discrimination," yet do not cite any supporting authority. Rather, evidence of discrimination in the present case need only be established according to the meaning of the Act.

which in turn is entitled to eleventh amendment immunity. But this argument ignores the holding of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which considers a state official acting in violation of the federal constitution to be "stripped of his official or representative" capacity so that the eleventh amendment would not bar an action against the official. *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67, 80 (1984) (quoting *Young, supra,* in part). Even if the defendants were sued in their official capacities, an action for prospective declaratory or injunctive relief is "not treated as actions against the state." *Kentucky v. Graham,* 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114, 122 n. 14 (1985); *Will v. Michigan Department of State Police,* 491 U.S. 58, 71 n. 10, 109 S.Ct. 2304, 2311–12 n. 10, 105 L.Ed.2d 45, 58 n. 10 (1989).[9]

For all of the above reasons we are constrained to deny defendants' motion to dismiss and an appropriate order will issue.

### ORDER

AND NOW, this 11th day of June, 1992, upon consideration of defendants' motion to dismiss, it is ORDERED that the motion is DENIED.

A scheduling conference in this matter will be held with counsel on Tuesday, June 30, 1992, at 9:00 a.m. The scheduling order previously entered in this case shall continue in effect.

---

9. Defendants do not contend that the eleventh amendment bars an action against a state official in his individual capacity. Rather, they argue that it cannot be discerned from the complaint what kind of relief is sought. However, as indicated, we construe the complaint as against the defendants individually. They were the commissioners who issued the orders to show cause and as such are allegedly accountable for interpreting and enforcing the laws in question.