**MEARS TRANSPORTATION GROUP, Checker Cab Company of Orlando, Inc., City Cab Company of Orlando, Inc., Yellow Cab Company of Orlando, Inc., Mears Special Services, Inc., Airport Limousine Service of Orlando, Inc., and Paratransit Risk Retention Group of Maryland, Inc., Plaintiffs–Appellees,**

v.

**STATE of Florida, Defendant,**

**Fred O. Dickinson, III, as Executive Director of the State of Florida Department of Highway Safety & Motor Vehicles, Defendant–Appellant.**

**ASHTIN LEASING, INC., d/b/a Ace Metro Cab, d/b/a Gator Cab, and Paratransit Risk Retention Group of Maryland, Inc., Plaintiffs–Appellees,**

v.

**Fred O. DICKINSON, III, as Executive Director of the State of Florida Department of Highway Safety & Motor Vehicles, and individually, Defendant–Appellant.**

Nos. 93–2080, 93–2191 and 93–2608.

United States Court of Appeals, Eleventh Circuit.

Oct. 11, 1994.

Harry F. Chiles, Ana C. Martinez, Asst. Atty. Gen., Florida Dept. of Legal Affairs Attorney General's Office, Richard Walter Thornburg, Dept. of Highway Safety & Motor Vehicle, Tallahassee, FL, for appellant in No. 93–2080.

Ellen Dollase Wilcox, Kansas City, MO, for amicus curiae National Assoc. of Insurance Commrs.

David H. Reimer, Becker & Poliakoff, Ft. Lauderdale, FL, for Biscayne Ins., Transp. Cas. & Credit General.

Gregory A. Presnell, Julie J. Fitzpatrick, Akerman, Senterfitt & Eidson, Orlando, FL, for appellees in Nos. 93–2080, 93–2191 and 93–2608.

Philip C. Olsson, Olsson, Frank & Weeda, PC, Washington, DC, for amicus curiae National Risk Retention Assn.

Ana Cristina Martinez, Florida Dept. of Legal Affairs Attorney General's Office, Tallahassee, FL, for appellants in No. 93–2191.

Ana C. Martinez, Harry F. Chiles, Attorney General's Office Dept. of Legal Affairs, Tallahassee, FL, Manuel E. Oliver, Attorney General's Office, Tampa, FL, for appellants in No. 93–2608.

Before BIRCH, Circuit Judge, and RONEY and CLARK, Senior Circuit Judges.

CLARK, Senior Circuit Judge:

Plaintiffs-appellees, for-profit passenger transportation companies and the risk retention group from which they purchase insurance, challenge the validity of Fla.Stat. ch. 324.031, which requires owners and operators of for-hire transportation vehicles to prove financial responsibility by maintaining certain specified insurance coverage. Specifically, plaintiffs-appellees contend that Fla.Stat. ch. 324.031 violates and is preempted by the federal Liability Risk Retention Act, 15 U.S.C. § 3901–3906. On cross-motions for summary judgment, the district court agreed with plaintiffs-appellees and permanently enjoined enforcement of Fla.Stat. ch. 324.031. Because we find that Fla.Stat. ch. 324.031 is precisely the type of state law that Congress expressly excepted from the preemption provisions of the Liability Risk Retention Act, we reverse.

## BACKGROUND FACTS

Plaintiffs-appellees Mears Transportation Group, Inc., ("Mears") and Ashtin Leasing, Inc., ("Ashtin") are for-hire passenger transportation companies.[1] Both Mears and Ashtin are members of and purchase insurance from plaintiff-appellee Paratransit Risk Retention Group of Maryland, Inc. ("Paratransit"). Plaintiffs-appellees challenge Fla.Stat. ch. 324.031, which is entitled, "Manner of proving financial responsibility." More specifically, they challenge the Florida legislature's 1992 amendment to this statute, Session Law 92–29. They contend that they are entitled to continue to prove financial responsibility as they did before the 1992 amendment.

Prior to the 1992 amendment, Fla.Stat. ch. 324.031 permitted the operator or owner of any vehicle, including for-hire passenger transportation vehicles, to demonstrate financial responsibility by posting a bond or deposit equal to the number of vehicles owned times $25,000, up to a maximum of $100,000; in addition, the statute required an owner or operator other than a natural person to maintain insurance providing coverage in excess of $25,000 combined single limits to a minimum of $100,000 combined single limits.[2] Thus, section 342.031 permitted owners of for-hire passenger transportation vehicles, such as Mears and Ashtin, to self-insure the first $25,000 of liability, with the bond or deposit available to insure payment of claims within this $25,000 layer of self-insurance. Mears and Ashtin both complied with section 324.031 by posting a $100,000 certificate of deposit with the State of Florida and by purchasing excess liability coverage from Paratransit. The Paratransit insurance provided coverage for liability in excess of $25,-

[1]. Mears oversees the insurance needs of the remaining for-hire transportation company appellees, which are Checker Cab Company of Orlando, Inc., City Cab Company of Orlando, Inc., Yellow Cab Company of Orlando, Inc., Mears Special Services, Inc., and Airport Limousine Service of Orlando, Inc. Mears R1–11 at ¶ 2. (The record citations in this opinion that refer to the record in *Mears Transportation Group, Inc. v. Fred O. Dickinson*, Middle District of Florida Case No. 92–632–CIV–ORL–22, are preceded by "Mears." The record citations that refer to the record in *Ashtin Leasing, Inc. v. Fred O. Dickinson*, Middle District of Florida Case No. 93–133–CIV–ORL–3A22, are preceded by "Ashtin.")

[2]. Fla.Stat. ch. 324.031 (1991) (amended 1992).

000, for which both Mears and Ashtin were self-insured, up to $500,000 in the case of Mears and $300,000 in the case of Ashtin.[3] In 1991, Mears operated 502 vehicles;[4] thus, Mears had less than $200 per vehicle on deposit to insure payment of claims within the $25,000 layer of self-insurance. Ashtin, which operated 72 units in 1992,[5] had less than $1400 per vehicle on deposit.

In 1992, the Florida legislature amended section 324.031 with Session Law 92–29. As amended, section 324.031 requires the owners and operators of for-hire passenger transportation vehicles to prove financial responsibility by maintaining insurance covering the first dollar of liability per accident up to $30,000 combined single limits; this insurance must be purchased from "an insurance carrier which is a member of the Florida Insurance Guaranty Association."[6] By so amending section 324.031, the Florida legislature sought to provide persons injured in for-hire passenger transportation vehicles with the protection of the state insurance guaranty fund. Thus, section 324.031 effectively (1) prevents the owners and operators of for-hire passenger transportation vehicles from self-insuring the first $30,000 in liabilities, and (2) precludes those insurance carriers that are not members of the Florida Insurance Guaranty Association ("FIGA") from providing the first $30,000 layer of insurance

on for-hire passenger transportation vehicles; this set of non-member insurance carriers includes, among many others,[7] risk retention groups.[8] Owners and operators of for-hire passenger transportation vehicles may choose to purchase insurance coverage for liabilities in excess of the first $30,000; however, section 324.031 does not require or otherwise regulate such excess insurance coverage.[9]

After the Florida legislature passed Session Law 92–29, the Florida Department of Highway Safety and Motor Vehicles notified both Mears and Ashtin that their financial responsibility certificates would be canceled if they did not comply with Fla.Stat. ch. 324.031 as amended. Shortly thereafter, Paratransit, Mears, and the companies for which Mears oversees insurance needs[10] filed this lawsuit against Fred O. Dickinson, III, as Executive Director of the State of Florida Department of Highway Safety and Motor Vehicles.[11] Plaintiffs alleged that Fla. Stat. ch. 324.031 as amended was in conflict with the federal Liability Risk Retention Act, which exempts risk retention groups from certain state regulation.[12] The parties filed cross-motions for summary judgment on this issue. Relying on a provision in the Liability Risk Retention Act that exempts risk retention groups from state laws that "otherwise discriminate against a risk retention group or

---

3. Mears R1–11 at ¶ 3; Ashtin R1–6 at ¶ 3.

4. Mears R1–11 Attachment.

5. Ashtin R1–15 Exh. A.

6. Fla.Stat. ch. 324.031; Fla.Stat. ch. 324.021(7) and (8).

7. *See* Mears R1–26 at ¶ 4, where a Reinsurance/Financial Specialist with the Florida Department of Insurance attests: "In the State of Florida, there are a number of unauthorized insurance companies, these are (a) surplus line companies; (b) risk retention groups; (c) captive insurers; (d) accessible mutual companies; (e) reciprocals; and (f) commercial self insurance trust funds." *See also* Fla.Stat. ch. 631.52, listing types of insurance the carriers for which are not members of the FIGA.

8. 15 U.S.C. § 3902(a)(2) prevents risk retention groups from participating in state insurance guaranty funds.

9. The counties and municipalities in Florida do require proof of insurance coverage in excess of the $30,000 minimum coverage required by section 324.031. Mears Deposition Exh. 1–Comp, House of Representatives Committee on Insurance Bill Analysis & Economic Impact Statement for HB 1501, at 2.

10. *See* note 1.

11. Plaintiffs also named the state of Florida as a defendant, Mears R1–6, but subsequently voluntarily dismissed the state from the action. Mears R1–20.

12. Plaintiffs also alleged that Fla.Stat. ch. 324.-031 as amended violated the state and federal equal protection clause and 42 U.S.C. § 1983. Mears R1–6. After the district court ruled in plaintiffs' favor based on the Liability Risk Retention Act, plaintiffs dismissed these remaining claims without prejudice. Mears R4–81.

any of its members," [13] the district court concluded: "Inasmuch as risk retention groups cannot belong to FIGA, and Session Law 92–29 requires for-hire passenger transportation businesses to use FIGA insurers to satisfy financial responsibility, the Session Law plainly discriminates against risk retention groups." [14] Relying on this finding of discrimination, the district court rejected plaintiffs' argument that financial responsibility laws, like Fla.Stat. ch. 324.031, were expressly excepted from the Liability Risk Retention Act's preemption provisions. The district court entered summary judgment in favor of plaintiffs and permanently enjoined defendant from enforcing Fla.Stat. ch. 324.-031 as amended against plaintiffs. [15] Dickinson appealed.

Thereafter, Paratransit and Ashtin filed a similar suit against Dickinson. Relying on the district court's decision in the Mears case, Paratransit and Ashtin sought to enjoin Dickinson from enforcing Fla.Stat. ch. 324.-031 as amended against Ashtin. Upon joint stipulation of the parties, the district court entered summary judgment in favor of plaintiffs on their Liability Risk Retention Act claim and permanently enjoined Dickinson from enforcing Fla.Stat. ch. 324.031 against plaintiffs. [16] Dickinson appealed. The two appeals, from the district court's decision in the Mears case and from the district court's decision in the Ashtin case, were consolidated by order of this court.

## DISCUSSION

The issue before us is whether Fla.Stat. ch. 324.031 as amended, which specifies the manner by which owners and operators of for-hire passenger transportation vehicles may prove financial responsibility, is preempted by the federal Liability Risk Retention Act. Because we find that Fla.Stat. ch. 324.031 as amended is precisely the type of state financial responsibility law that Con-

gress expressly excepted from the preemption provisions of the Liability Risk Retention Act, we reverse.

The Liability Risk Retention Act did not always encompass motor vehicle liability insurance. As originally enacted in 1981, the Act was known as the "Product Liability Risk Retention Act of 1981" and was limited to product liability insurance. [17] The 1981 Act addressed the problems businesses were encountering in obtaining affordable product liability coverage. As the legislative history states, the purpose of the Act was to "reduce the problem of the rising cost of product liability insurance by permitting product manufacturers to purchase insurance on a group basis at more favorable rates or to self-insure through insurance cooperatives called 'risk retention groups.' " [18] To accomplish this purpose, Congress specified that the Act would preempt certain state laws that prohibited or hindered the formation of these groups. Specifically, the Act provides:

(a) [A] risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—

(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group [excepting regulation by the State in which the group is chartered and certain specified regulation by non-domiciliary states];

(2) require or permit a risk retention group to participate in any insurance insolvency guaranty association to which an insurer licensed in the State is required to belong; [or]

. . . . .

(4) otherwise discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applica-

---

**13.** 15 U.S.C. § 3902(4).

**14.** Mears R4–78–4.

**15.** Mears R4–87.

**16.** Ashtin R1–31.

**17.** Product Liability Risk Retention Act of 1981, Pub.L. No. 97–45, 95 Stat. 949 (codified at 15 U.S.C. §§ 3901–3904 (1982) (amended 1986)).

**18.** H.R.Rep. No. 190, 97th Cong., 1st Sess. 4 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1432.

bility of State laws generally applicable to persons or corporations.[19]

In the legislative history, Congress explained that the purpose of these preemption provisions was to facilitate "the efficient operation of risk retention groups by eliminating the need for compliance with numerous non-chartering state statutes that, in the aggregate, would thwart the interstate operation [of] product liability risk retention groups."[20] Congress further explained that "[o]nly state laws which prohibit or state laws of a non-chartering state which attempt to regulate, directly or indirectly, the formation and operation of approved risk retention groups ... are preempted."[21] In justifying paragraph (2) of these provisions, which exempts risk retention groups from participation in state insurance insolvency guaranty funds, Congress said: "[R]isk retention groups are not full-fledged multi-line insurance companies, but limited operations providing coverage only to member companies, and only for a narrow group of coverages."[22]

In 1986, Congress amended the Act, expanding its scope to cover all types of liability insurance.[23] In so doing, Congress recognized that the operations of risk retention groups would no longer be limited to "narrow groups of coverages" and therefore would have wider application. Accordingly, Congress included in the 1986 amendments provisions to preserve the states' traditional role in regulating insurance and protecting the public. As the legislative history indicates, Congress intended to "augment[ ] the authority of non-chartering states to regulate solvency, trade practices and other matters" and "contemplated that States may enact statutes and issue regulations to protect the public to the extent such action is not exempt by th[e] Act."[24] First, Congress enacted Section 5, which expanded the scope of permissible non-domiciliary state regulation of risk retention groups.[25] Second, Congress enacted Section 8, which is entitled "Additional Clarification of Permissible State Authority."[26] With Section 8, Congress added to the Act a number of provisions, specifically, §§ 3902(f)–(h), 3903(g)–(h), and 3905, that preserved certain state authority and excepted certain state regulation from the Act's preemption provisions. Pertinent to this appeal is the exception to preemption set out in § 3905(d), which provides:

> Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance company, an excess lines company, a risk retention group, or any other source regardless of whether coverage is obtained directly from an insurance company or through a

---

**19.** 15 U.S.C. § 3902(a)(1), (2), and (4).

**20.** H.R.Rep. No. 190, 97th Cong., 1st Sess. 12 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1441.

**21.** H.R.Rep. No. 190, 97th Cong., 1st Sess. 6–7 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1435.

**22.** H.R.Rep. No. 190, 97th Cong., 1st Sess. 16 (1981), *reprinted in* 1981 U.S.C.C.A.N. 1432, 1445.

**23.** Risk Retention Amendments of 1986, Pub.L. No. 99–563, 100 Stat. 3170 (1986) (codified at 15 U.S.C. §§ 3901–3906 (Supp. IV 1992)).

**24.** H.R.Rep. No. 865, 99th Cong., 2d Sess. 7, 18 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5303, 5304, 5315.

**25.** Pub.L. No. 99–563, Sec. 5(b)-(e), 100 Stat. 3170, 3172–3173 (codified at 15 U.S.C. § 3902(a)(1)(D)-(I)). In commenting on these permissible non-domiciliary state regulations, this court has said: "In sum, with respect to risk retention groups, Congress carefully crafted a scheme which, on the one hand, provides for broad preemption of a non-domiciliary state's licensing and regulatory laws but which, on the other hand, explicitly preserves for those states several very important powers." *State of Florida, Department of Insurance v. National Amusement Purchasing Group, Inc.*, 905 F.2d 361, 363–64 (11th Cir.1990).

**26.** Pub.L. No. 99–563, Sec. 8, 100 Stat. 3170, 3175–3176.

broker, agent, purchasing group or any other person.

Thus, Congress specifically excepted from the Act's preemption provisions those state laws aimed at assuring the financial responsibility of entities subject to state, county, and city licensure laws. By so doing, Congress evidenced its intent to preserve for the states the authority to utilize financial responsibility laws to protect the public.

The state law at issue here, Fla.Stat. ch. 324.031, is entitled, "Manner of proving financial responsibility." In 1992, the Florida legislature amended this statute to better protect the public. Under the former statute, Mears and Ashtin carried no insurance for the first $25,000 in liability and had for each vehicle less than $200 and $1400 respectively on deposit to insure payment of claims by injured persons. Under Fla.Stat. ch. 324.031 as amended, persons injured in for-hire passenger transportation vehicles have the protection of insurance and of the state insurance guaranty fund. The amended statute is precisely the type of financial responsibility law that Congress intended, with § 3905(d), to except from the preemption provisions of the Liability Risk Retention Act. Subsection 3905(d) specifically authorizes the state to "specify acceptable means of demonstrating financial responsibility" as a condition for obtaining a license or permit to undertake specified activities. The subsection further provides that "[s]uch means may *include or exclude* insurance coverage obtained from an admitted insurance company, ... a risk retention group, or any other source...." By amending Fla.Stat. ch. 324.-031, the Florida legislature specified an acceptable means for owners and operators of for-hire passenger transportation vehicles to demonstrate financial responsibility; this means *includes* insurance coverage obtained from members of the FIGA and *excludes* the first $30,000 of insurance coverage obtained from non-members, including risk retention groups.[27] Thus, Fla.Stat. ch. 324.031 as

amended falls squarely within the language of § 3905(d).

The language of § 3905(d) is qualified by the first clause of the subsection, which reads: "Subject to the provisions of section 3902(a)(4) of this title relating to discrimination...." Subsection 3905(d) is subject to subsection 3902(a)(4), which exempts risk retention groups from state laws that "discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations." It is upon this anti-discrimination provision that the district court rested its holding. The district court concluded that subsection 3905(d) does not except Fla.Stat. ch. 324.031 from the Liability Risk Retention Act's preemption provisions because the state law discriminates against risk retention groups.

There is absolutely nothing in the record before this court to support such a finding of discrimination. Indeed, appellees have not at any time offered any evidence of discrimination. Contrary to the district court's conclusion, the record indicates a *lack* of discriminatory intent on the part of the Florida legislature. First, Fla.Stat. ch. 324.031 as amended does not single out risk retention groups for preclusion; risk retention groups are one of many types of insurance carriers that are ineligible for membership in the FIGA.[28] Second, to the extent Fla.Stat. ch. 324.031 precludes insurance obtained from a carrier that is not a member of FIGA, the preclusion is extremely narrow; it applies *only* to the owners and operators of for-hire passenger transportation vehicles and *only* to the first $30,000 in coverage. Finally, the financial responsibility requirements about which appellees complain are a legitimate and rational exercise of the state's traditional authority to act in the public interest; the requirements are designed to provide those members of the public injured in for-hire passenger transportation vehicles with the protection of the state insurance guaranty fund. Thus, the record before this court does not support the district court's conclu-

---

**27.** As discussed above, Fla.Stat. ch. 324.031 as amended permits jitney operators to purchase insurance coverage in excess of $30,000 from risk retention groups or any other non-member carriers.

**28.** *See* note 7 and text accompanying.

sion that Fla.Stat. ch. 342.031 discriminates against risk retention groups.

In the last paragraph of its opinion, the district court concludes: "By virtue of the incorporation of the anti-discrimination provision from § 3902(a)(4) into § 3905(d), the latter section does not permit the State of Florida to exclude insurance obtained from risk retention groups in general as a means of satisfying its motor vehicle financial responsibility laws insofar as they relate to owners/operators of for-hire passenger transportation vehicles." [29]

This conclusion is inconsistent with settled principles of statutory construction. A court should construe a statute so as to give effect to each of its provisions, "so that no part of it will be inoperative or superfluous, void or insignificant." [30] The opening clause of subsection 3905(d) provides that it is subject to the anti-discrimination provisions of subsection 3902(a)(4); subsection 3905(d) goes on to specifically authorize states to enact financial responsibility requirements that "exclude insurance coverage obtained from ... a risk retention group." To conclude, then, as did the district court, that any state financial responsibility requirement that excludes insurance obtained from risk retention groups "discriminates" against these groups is to render subsection 3905(d) absolutely inoperative; that is, under the district court's interpretation, the opening clause of subsection 3905(d), which qualifies the remainder of the provision, also swallows the remainder of the provision. Certainly, Congress did not enact subsection 3905(d) only to nullify it completely; thus, Congress could not have intended for the anti-discrimination provisions of subsection 3902(a)(4) to render the remainder of 3905(d) inoperative.

The district court attempted to justify its holding by interpreting subsection 3905(d) to mean that states could enact financial responsibility requirements that exclude insurance coverage obtained from a *particular* risk retention group, rather than from risk retention groups in general. Under this interpretation, subsection 3905(d) becomes a

means by which states may exclude a particular risk retention group that is in precarious financial condition. The district court's interpretation is erroneous because it would render superfluous several provisions of the Risk Retention Liability Act that are specifically aimed at preserving state authority to exclude financially impaired risk retention groups. Most notably, subsection 3902(e) and section 3906 specifically authorize a state to obtain injunctive relief to prevent a financially impaired risk retention group from operating in the state.[31] Thus, the district court ignored principles of statutory construction and, thereby, misconstrued subsection 3905(d), which clearly excepts Fla.Stat. ch. 324.031 from the preemption provision of the Risk Retention Liability Act.

The new Florida statute is aimed at protecting the public, not at discriminating against risk retention groups; as such, it is exactly the type of state statute that Congress had in mind when it added subsection 3905(d) to the Risk Retention Liability Act in 1986. Congress intended to grant to the states the authority to regulate certain businesses affected with the public interest, such as jitney vehicles. Requiring such businesses to carry public liability insurance has been the province of cities, counties, and states for as long as these businesses have existed.

### CONCLUSION

For the reasons explained above, the district court's decision is REVERSED and the case is REMANDED for entry of judgment in favor of defendant-appellant Dickinson.

RONEY, Senior Circuit Judge, dissenting:

I respectfully dissent. I would affirm the decision of the district court.

The sole issue in this case is whether Session Law 92–29, a Florida law specifying the manner by which owner/operators of for-hire passenger transportation vehicles may prove financial responsibility is preempted by the Federal Liability Risk Retention Act, 15 U.S.C.A. §§ 3901–3906.

---

**29.** Mears R4–78–7.

**30.** *E.g., Gonzalez v. McNary*, 980 F.2d 1418, 1420 (11th Cir.1993).

**31.** *See also* §§ 3902(a)(1)(E) (authorizing financial examination of risk retention groups) *and* 3902(d)(3) (requiring risk retention groups to submit annual financial statements).

All but one of the plaintiffs are individual for-hire passenger transportation companies that are members of Paratransit Risk Retention Group of Maryland, Inc. ("Paratransit"), which is itself a plaintiff. The district court granted partial summary judgment in favor of plaintiffs against the defendant, Fred O. Dickinson, III, as Executive Director of the State of Florida Department of Highway Safety & Motor Vehicles (the "State"), and permanently enjoined enforcement of the state law, holding that it violated federal law. The remaining claims were resolved by stipulation of the parties.

In my judgment, the district court's opinion provides a thorough and correct analysis of all but one of the issues raised on appeal. A copy of that opinion is attached to this dissent as an Appendix. I address one issue emphasized by the State on appeal.

On appeal, the State contends that there is no conflict between the federal act and Session Law 92–29 because the state law regulates in an area that risk retention groups do not cover. While the state law's focus is to regulate the initial layer of protection provided by for-hire passenger transportation companies, risk retention groups only write policies covering losses in excess of that initial layer. Paratransit has never written insurance within this mandatory first layer of coverage, and Session Law 92–29 has no effect on the plaintiffs' ability to continue using Paratransit or any other risk retention group for their excess coverage. Basically, the State characterizes the function of the risk retention group as no more than an excess carrier.

Such an argument focuses on only a narrow aspect of how risk retention groups function. A risk retention group is a corporation or other limited liability entity organized for the primary purpose of assuming and spreading all or a portion of the risk of liability exposure among its group members. See 15 U.S.C.A. § 3901(a)(4)(A)–(C) (1993); § 627.-942(9)(a) and (b), Fla.Stat. (1993). Because each member has similar risks and the members are experienced in administering their own claims, the group can offer affordable coverage for each member's needs. Intrinsic in the group's operation, however, is the ability of each of its members to retain some portion of the risk. The level of "self-insured retention" retained by each member provides an economic incentive to control risks and administrate claims efficiently and thereby avoid the higher cost of commercial premiums. By requiring the purchase of dollar one coverage, Session Law 92–29 eliminates the members' ability to retain risk and thereby discriminates against risk retention groups and their members. See 15 U.S.C.A. § 3905(d) (incorporating the provisions of section 3902(a)(4) relating to discrimination).

The federal law does not preempt the means by which the State can require financial responsibility for self-insurance, but the State cannot effectively eliminate the risk that may be retained by members of risk retention groups. The State must develop ways to strengthen its financial responsibility laws that do not eliminate risk retention group members' ability to be self-insured.

## APPENDIX

United States District Court
Middle District of Florida
Orlando Division.

Mears Transportation Group, Inc., et al.,

Plaintiffs,

v.

Fred O. Dickinson, III,

Defendant.

Case No. 92–632–CIV–ORL–22

Dec. 30, 1992.

*ORDER*

This cause comes before the Court for consideration of Plaintiffs' Motion for Partial Summary Judgment (Dkt. 34), filed October 13, 1992. Therein, Plaintiffs contend that recently-effective Florida Session Law 92–29, which amended § 324.031, Florida Statutes (1992), violates the Liability Risk Retention Act, 15 U.S.C. §§ 3901–3906, and is therefore invalid. After having carefully considered the parties' submissions, the Court agrees and determines that partial summary judgment should be granted in Plaintiffs' favor.

The first six Plaintiffs named in the Amended Complaint are in the for-hire passenger transportation business. As its name

suggests, the remaining Plaintiff, Paratransit Risk Retention Group of Maryland, Inc. ("Paratransit"), is a risk retention group. The Defendant is Fred O. Dickinson, III, the Executive Director of the Florida Department of Highway Safety and Motor Vehicles ("DHSMV").

Florida's motor vehicle financial responsibility laws, contained within Chapter 324, Florida Statutes, require motor vehicle owners and/or operators to provide financial security to recompense others for personal injury or property damage caused by operation of a motor vehicle. Prior to October 1, 1992, § 324.031, Florida Statutes, governing the manner of providing financial responsibility, provided as follows:

> The operator or owner of a vehicle may prove his financial responsibility by:
> (1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in s. 324.021(8) and s. 324.151;
> (2) Posting with the [DHSMV] a satisfactory bond of a surety company authorized to do business in this state, conditioned for payment of the amount specified in s. 324.021(7);
> (3) Furnishing a certificate of the [DHSMV] showing a deposit of cash or securities in accordance with s. 324.161; or
> (4) Furnishing a certificate of self-insurance issued by the [DHSMV] in accordance with s. 324.171.
> Notwithstanding the amounts specified in s. 324.021(7) or s. 324.161, any person, including any firm, partnership, association, corporation, or other person, other than a natural person, electing to use the method of proof specified in subsection (2) or subsection (3) shall post a bond or deposit equal to the number of vehicles owned times $25,000, to a maximum of $100,000; in addition, any such person, other than a natural person, shall maintain insurance providing coverage in excess of limits of $10,000/20,000/5,000 or $25,000 combined single limits, and such excess insurance shall provide minimum limits of $50,000/100,000/25,000 or $100,000 combined single limits.

Before October 1, 1992, Mears complied with the statute by, in part, purchasing insurance coverage through Paratransit. In turn, DHSMV issued a financial responsibility certificate to Plaintiff Mears Transportation Group, Inc. and its affiliates (the other named Plaintiffs).

Florida Session Law 92–29, effective October 1, 1992, created a distinction in the financial responsibility laws between owners/operators of for-hire passenger transportation vehicles and owners/operators of motor vehicles in general. The Session Law, which amended § 324.031, continued to allow owners/operators of other than for-hire passenger transportation vehicles to prove financial responsibility by the four methods set forth in § 324.031(1)–(4). However, the Session Law changed § 324.031 to provide that

> [t]he owner or operator of a taxicab, limousine, jitney, or any other for-hire transportation vehicle may prove financial responsibility by providing satisfactory evidence of holding a motor vehicle liability policy as defined in s. 324.021(8) or s. 324.151, which policy is issued by an insurance carrier which is a member of the Florida Insurance Guaranty Association.

As amended, § 324.031 thus prohibits owners/operators of for-hire passenger transportation vehicles from purchasing insurance from risk retention groups to satisfy financial responsibility, inasmuch as risk retention groups are not permitted to join the Florida Insurance Guaranty Association ("FIGA").

Prior to the effective date of Session Law 92–29, a representative of DHSMV wrote a representative of Plaintiff Mears Transportation Group, Inc., stating, in pertinent part, as follows:

> Your financial responsibility certificate will expire November 5, 1992. Based upon a new law effective October 1, 1992, the owner or operator of a taxi, limousine, or other for-hire passenger transportation vehicle will be required to prove their financial responsibility by purchasing an insurance policy through an insurance company which belongs to the Florida Insurance Guaranty Association. Therefore, effective October 1, 1992, this office will have no alternative but to cancel your financial responsibility certificate.

As previously stated, Plaintiffs contend that Session Law 92–29 violates the Liability Risk Retention Act ("LRRA"), 15 U.S.C. §§ 3901–3906. Specifically, Plaintiffs assert

that the Session Law violates §§ 3902(a)(1), (2) and (4) of the LRRA. These statutory sections provide as follows:

(a) Exemptions from State laws, rules, regulations, or orders

Except as provided in this section, a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—

(1) make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group and any State may require such a group to—[exceptions not pertinent];

\* \* \* \* \* \*

(2) require or permit a risk retention group to participate in any insurance insolvency guaranty association to which an insurer licensed in the State is required to belong;

\* \* \* \* \* \*

(4) otherwise discriminate against a risk retention group or any of its members, except that nothing in this section shall be construed to affect the applicability of State laws generally applicable to persons or corporations.

Clearly, Session Law 92–29 at least indirectly regulates the operation of risk retention groups, thereby violating 15 U.S.C. § 3902(a)(1). It also violates 15 U.S.C. § 3902(a)(4) for the reason that it otherwise discriminates against a risk retention group. Although Defendant argues that an issue exists concerning whether the Session Law in fact discriminates against risk retention groups, the Court rejects that contention. Inasmuch as risk retention groups cannot belong to FIGA, and Session Law 92–29 requires for-hire passenger transportation businesses to use FIGA insurers to satisfy financial responsibility, the Session Law plainly discriminates against risk retention groups.

Moreover, although § 3902(a)(4) contains an exception for "State laws generally applicable to persons or corporations", the Court determines that the amendment effected by the Session Law 92–29 does not qualify un-der that exception. Rather than a law of general application, the amendment created by the Session Law is narrowly focused on the manner in which owners/operators of for-hire passenger transportation vehicles may satisfy financial responsibility. To apply § 3902(a)(4) in a contrary manner would only serve to eviscerate the prohibition against discrimination contained in that section.

Defendant also contends that by virtue of two other exceptions contained in the LRRA, Session Law 92–29 does not violate the LRRA. Defendant first relies on 15 U.S.C. § 3902(b). That statutory provision reads as follows:

(b) Scope of Exemptions

The exemptions specified in subsection (a) of this section apply to *laws governing the insurance business* pertaining to—

(1) liability insurance coverage provided by a risk retention group for—

(A) such group; or

(B) any person who is a member of such group;

(2) the sale of liability insurance coverage for a risk retention group; and

(3) the provision of—

(A) insurance related services;

(B) management, operations, and investment activities; or

(C) loss control and claims administration (including loss control and claims administration services for uninsured risks retained by any member of such group);

for a risk retention group or any member of such group with respect to liability for which the group provides insurance. (Emphasis supplied).

Defendant contends the LRRA exemptions upon which Plaintiffs rely do not apply because Session Law 92–29 is not a law "governing the insurance business", as that phrase is used in the introductory portion of § 3902(b). The Court disagrees. Session Law 92–29 provides that only automobile liability insurance written through a FIGA-member insurer may be used by owners/operators of for-hire passenger transportation vehicles to satisfy financial responsibility. Plainly, it is a law which governs the insurance business.

Defendant also relies on another part of the LRRA, Section 3905, which is entitled "Clarification concerning permissible State authority". That section provides, in pertinent part, as follows:

(a) State motor vehicle no-fault and motor vehicle financial responsibility laws

Nothing in this chapter shall be construed to exempt a risk retention group or purchasing group authorized under this chapter from the policy form or coverage requirements of any State motor vehicle no-fault or motor vehicle financial responsibility insurance law.

\* \* \* \* \* \*

(d) State authority to specify acceptable means of establishing financial responsibility

Subject to the provisions of section 3902(a)(4) of this title relating to discrimination, nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance company, an excess lines company, a risk retention group, or any other source regardless of whether coverage is obtained directly from an insurance company or through a broker, agent, purchasing group, or any other person.

Essentially, Defendant contends that §§ 3905(a) and (d) authorize states to exclude insurance provided by *all* risk retention groups as a means of satisfying motor vehicle financial responsibility laws. Again, the Court must reject this contention.

Defendant's reliance on § 3905(a) seems rather halfhearted, and for good reason. Session Law 92–29 does not seek to impose policy form or coverage requirements upon risk retention groups. Rather, it seeks to completely exclude insurance provided by risk retention groups to owners/operators of for-hire passenger transportation vehicles as a means of satisfying the financial responsi-

bility law. Accordingly, § 3905(a) does not apply.

Defendant's reliance on § 3905(d) is also misplaced. At least one court has already rejected virtually the same § 3905(d) argument Defendant makes. The court in *Charter Risk Retention Group Insurance Company v. Rolka*, 796 F.Supp. 154, 158 (M.D.Pa. 1992), stated that such an argument overlooked the first sentence of § 3905(d), which provides that the section is subject to the anti-discrimination provision contained in § 3902(a)(4). Continuing, the court stated:

To interpret section 3905(d) as defendants insist (thus, granting states unlimited discretion to dictate the means of demonstrating financial responsibility) would render meaningless the anti-discrimination provisions of [the] Act. Rather, the two sections must be read together to properly construe the Act's meaning.

*Rolka*, 796 F.Supp. at 158. In a footnote, the court concluded that § 3905(d) does not permit a state to exclude risk retention groups in general as a means of satisfying financial responsibility laws. Specifically, the court stated that

[§ 3905(d) ] means that should a *particular* risk retention group fail to meet conditions of financial responsibility, they may be properly excluded. Any other reading of this provision (such as that states may exclude risk retention groups *in general* as a means of financial responsibility) would allow states to discriminate against all risk retention groups and their members in violation of the anti-discrimination provisions of the Act. (Emphasis in original).

*Rolka*, 796 F.Supp. at 159, n. 6.

The Court approves and adopts the reasoning set forth in *Rolka*. By virtue of the incorporation of the anti-discrimination provision from § 3902(a)(4) into § 3905(d), the latter section does not permit the State of Florida to exclude insurance obtained from risk retention groups in general as a means of satisfying its motor vehicle financial responsibility laws insofar as they relate to owners/operators of for-hire passenger transportation vehicles. Moreover, although § 3902(a)(4) contains an exception for "State laws generally applicable to persons or corporations", the Court has previously determined in this Order that Session Law 92–29 is not such a law. Accordingly, that exception does not apply.

Based on the foregoing, it is ORDERED as follows:

1. Plaintiffs' Motion for Partial Summary Judgment (Dkt. 34) is GRANTED.

2. The Clerk is directed to enter summary judgment in Plaintiffs' favor on Count III of Plaintiffs' Amended Complaint.

3. Plaintiffs are directed to furnish the Court and Defendant with a proposed permanent injunction within 10 days from the date of this Order.

DONE AND ORDERED in Chambers in Orlando, Florida, this 30th day of December, 1992.

/s/ Anne C. Conway
ANNE C. CONWAY
United States District Judge

Copies to: Counsel of Record