**STATE OF FLORIDA, DEPARTMENT OF INSURANCE, Plaintiff–Appellee,**

v.

**NATIONAL AMUSEMENT PURCHASING GROUP, INC., Risk Retention Service Corporation, Bel–Air Insurance Company, Defendants–Appellants.**

No. 89–3930.

United States Court of Appeals,
Eleventh Circuit.

July 9, 1990.

Alan C. Gold, Rassner, Malove, Rassner, Kramer & Gold, South Miami, Fla., for defendants-appellants.

Dennis S. Silverman, Dept. of Ins., State of Fla., Tallahassee, Fla., for plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

PER CURIAM:

In this case, we affirm for the reasons stated in the district court's order, pertinent portions of which are below[*]:

On October 14, 1987, the court conducted a hearing upon plaintiff's motion for a preliminary injunction.... By agreement of the parties, trial of the action was advanced and consolidated with the preliminary injunction hearing as authorized by Federal Rule of Civil Procedure 65(a)(2)....

This case turns upon the court's construction of the Product Liability Risk Retention Act of 1981 (the "Act"), as amended by the Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901–3906 (1982 & Supp. V 1987). Such Act authorizes persons and businesses with similar or related liability exposure to purchase liability insurance on a group basis through purchasing groups or to self-insure through insurance cooperatives called risk retention groups. 15 U.S.C. § 3901(a)(4), (5). Aimed at reducing the cost and increasing the availability of commercial liability insurance, the Act expressly preempts state laws which make purchasing and risk retention groups illegal.

One of the defendants in this case, National Amusement Purchasing Group, Inc. ("National Amusement"), is a purchasing group formed pursuant to section 2(a)(5) of the Act. A purchasing group is defined under the Act as any group which

(A) has as one of its purposes the purchase of liability insurance on a group basis; (B) purchases such insurance only for its group members and only to cover their similar or related liability exposure, as described in sub-paragraph (C); (C) is composed of members whose businesses or activities are similar or related with respect to the liability to which members are exposed by virtue of any related, similar, or common business, trade, product, services, premises, or operations; and (D) is domiciled in any State.

15 U.S.C. § 3901(a)(5). A Missouri corporation whose members include several Florida businesses, National Amusement purchased insurance coverage for its members from defendant Bel–Aire Insurance Company, a Missouri insurer authorized by the Missouri Division of Insurance to sell insurance in Missouri. Defendant Risk Retention Service Corporation (RRSC) is also a Missouri corporation, allegedly formed to service risk purchasing groups such as National Amusement.

On April 10, 1987, through RRSC, National Amusement sent notice to plaintiff in this case, the State of Florida, Department of Insurance (the "department"), that it planned to offer liability coverage to businesses located in Florida, through policies

---

[*] In the district court, the appellants were defendants and the appellee, State of Florida, Department of Insurance, was plaintiff.

issued by Bel–Aire. Plaintiff responded by filing suit on August 27, 1987, seeking declaratory and injunctive relief from defendants' alleged violations of the insurance laws of Florida. Plaintiff contends that, pursuant to section 627.949 of the Florida Statutes, a purchasing group may purchase insurance or coverage on a risk located in Florida only from: (1) a risk retention group that is certificated or licensed in one of the states of the United States; (2) an authorized insurer; or (3) an eligible surplus lines insurer. Because Bel–Aire is none of the three, plaintiff argues that all three defendants are, or have been, transacting the business of insurance in Florida in noncompliance with applicable provisions of the Florida Insurance Code. Defendants argue in response that the federal Liability Risk Retention Act preempts the state laws cited by plaintiff, thus exempting defendants from any Florida law that would otherwise prevent the activities at issue here.

## DISCUSSION

Under Florida law, with limited exceptions, persons who transact the business of insurance in Florida must have a certificate of authority issued by the Department of Insurance. § 624.401(1). Any unauthorized insurer transacting the business of insurance in Florida is subject to liability for a civil penalty of not more than $1,000 for each nonwillful violation or not more than $10,000 for each willful violation. § 626.910. In addition, any person who represents or aids an unauthorized insurer may be subjected to criminal liability. § 626.902(1). The most notable exception to the certificate of authority requirement is that permitting the lawful transaction of surplus lines insurance, defined as insurance not procurable from an authorized insurer. § 624.402. Although the surplus lines insurer need not have a certificate of authority, he must be approved by the department, and the insurance written must be placed only by or through a licensed Florida surplus lines agent. § 626.915. Importantly, each surplus lines policy must carry a warning that the insurer is not licensed by the State of Florida and that

the protection provided by the Florida Insurance Guaranty Act does not apply. § 626.924.

■ The Liability Risk Retention Act has created another category of insurer which may legally transact insurance business within Florida—the risk retention group. See Fla.Stat. § 624.11(2) (risk retention groups, organized under the provisions of the Act and properly licensed and authorized in an appropriate jurisdiction, may transact insurance in Florida, subject to selected provisions of the Florida Insurance Code). Under the Act, persons or businesses with similar types of risk may form and own their own insurance company to insure against their liability exposures. 15 U.S.C. § 3901(a)(4). Chartered in the group's state of domicile, the risk retention group is regulated primarily by the domiciliary state. The authority of non-domiciliary states to license and regulate risk retention groups is largely preempted. In sweeping preemption language, the Act provides in section 3(a)(1) that "a risk retention group is exempt from any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would ... make unlawful, or regulate, directly or indirectly, the operation of a risk retention group except that the jurisdiction in which it is chartered may regulate the formation and operation of such a group." 15 U.S.C. § 3902(a)(1). Specific exceptions to this broad preemption are enumerated in subsequent subsections. See 15 U.S.C. § 3902(a)(1)(A)–(I). Notably, non-domiciliary states are permitted to: (1) tax business written by a risk retention group in such state; (2) require compliance with the state's unfair claims and deceptive trade practices laws; (3) require notice on policies issued by a risk retention group that the non-domiciliary state's insurance laws do not apply and state insurance insolvency guaranty funds are not available; and (4) subject the group, under some circumstances, to an examination by the state insurance commissioner as to the group's financial condition. In sum, with respect to risk retention groups, Congress carefully crafted a scheme which, on the one hand, pro-

vides for broad preemption of a non-domiciliary state's licensing and regulatory laws but which, on the other hand, explicitly preserves for those states several very important powers.

■ In addition to risk retention groups, the Act recognizes a separate alternative to traditional insurance—purchasing groups. For these groups, section 4 of the Act provides a separate and very different preemption scheme. Unlike the risk retention section which broadly preempts state law while enumerating specific laws that states may enforce, the section pertaining to purchasing groups expressly preempts a limited number of specific state laws while also providing that "[n]othing in this chapter shall be construed to affect the authority of any State to make use of any of its powers to enforce the laws of such State with respect to which a purchasing group is not exempt under this chapter." 15 U.S.C. § 3903(g). As noted in the House Report on the 1986 amendments to the Act:

> In enacting the 1981 Act, it was recognized that there were a number of identifiable kinds of State laws that prevented the establishment and functioning of purchasing groups. Those laws were listed in Section 4(a) of the 1981 Act and it is those laws that are preempted. Subject to the prohibition on discrimination against purchasing groups, the states remained able to apply all their other laws to purchasing groups and those dealing with such groups. This approach is carried forward into the 1986 Act. Therefore, the Committee did not consider it necessary to itemize all the other laws to which purchasing groups remain subject.

H.R.Rep. No. 865, 99th Cong., 2d Sess. 19, *reprinted in* 1986 U.S.Code Cong. & Admin.News 5303, 5316. In other words, both the language and the history of the Act suggest that Congress intended there to be limited preemption of state laws relative to purchasing groups.

Notwithstanding such suggestion, defendants in this case argue that section 4 of the Act was intended to effect a complete preemption of state licensing laws, including those prohibitions against the unauthorized transaction of insurance business. In essence, defendants would have this court recognize a fourth category of insurer which may lawfully transact insurance in Florida, an insurer which is neither licensed in the state, nor approved as a surplus lines insurer in the state, nor registered as a risk retention group in the state.

In support of their argument, defendants first point to sections 4(a)(2) and (3) of the Act. Section 4(a) preempts:

> any State law, rule, regulation, or order to the extent that such law, rule, regulation, or order would—
>
> .  .  .  .  .
>
> (2) make it unlawful for an insurer to provide or offer to provide insurance on a basis providing, to a purchasing group or its members, advantages, based on their loss and expense experience, not afforded to other persons with respect to rates, policy forms, coverages, or other matters;
>
> (3) prohibit a purchasing group or its members from purchasing insurance on the group basis described in paragraph (2) of this subsection.

15 U.S.C. § 3903(a)(2), (3). Defendants contend that the Florida statute relied upon by the department in this case, if enforced, would make it unlawful for Bel–Aire to provide, and National Amusement to purchase, insurance which affords advantages based on the group's loss and expense experience. Thus, defendants conclude that the plain terms of the statute exempt Bel–Aire and National Amusement from the state licensing laws. Further, defendants say that section 4(f) of the Act confirms that the state law at issue here is preempted. That section provides that "[a] purchasing group may not purchase insurance from a risk retention group that is not chartered in a State or from an insurer not admitted in the State in which the purchasing group is located." 15 U.S.C. § 3903(f). Assuming that the Act uses the word "located" to refer to the purchasing group's domiciliary state, defendants reason that because section 4(f) states that a purchasing group may not purchase from an insurer not admitted to the state in which the

purchasing group is located, the insurer need *only* be admitted to that state and need not be admitted or otherwise qualified elsewhere. Indeed, defendants suggest that section 4(f) would be superfluous if it were given any other construction.

■ The court is unable to agree with defendants' construction of the Act. Although convicted that defendants correctly analyze the meaning of the term "located" in Section 4(f), *see Swanco Insurance Co. —Arizona v. Hager,* 879 F.2d 353 (8th Cir. 1989) (section 4(f) refers to the single state in which the purchasing group is domiciled), the court rejects the argument that the Act exempts insurers of purchasing groups from the licensing and regulatory laws of nondomiciliary states. Neither section 4(f) nor sections 4(a)(2) and (3) can be read so broadly. Section 4(a)(2) expressly preempts only those state laws that prohibit insurers from offering purchasing groups "advantages, based on their loss and expense experience." 15 U.S.C. § 3903(a)(2). Section 4(a)(3) preempts only those state laws which prohibit purchasing groups from purchasing insurance which reflects such advantages. Neither section purports to exempt purchasing group insurers from being licensed or otherwise authorized in the state where a purchasing group member resides. While it may be correct to say that preemption of Florida's licensing law would enhance the ability of purchasing groups to operate, there is not one section in the limited list of preempted laws that explicitly preempts a state's licensing laws as they apply to purchasing groups. There is little doubt that a non-domiciliary state's licensing laws, if applicable to purchasing group insurers, would burden the ability of insurers to offer purchasing groups advantages based on their loss and expense experience. Indeed, the same could be said of many other types of insurance regulations. Congress did not include within its list of preempted laws, however, a section prohibiting laws and regulations which *burden* the ability of purchasing groups to operate. Congress clearly could have provided for such preemption. Instead, Congress chose to specifically preempt a limited number of state laws affecting purchasing groups, when it simultaneously and in the same Act preempted in broad terms all but a limited number of state laws affecting risk retention groups. Given Congress's choice, this court cannot accept the interpretation defendants ask the court to adopt.

Section 4(f) does not convince the court otherwise. Section 4(f) provides that a purchasing group may not purchase from an insurer not admitted to the state in which the purchasing group is located. It does not provide, as defendants suggest, that a nondomiciliary state is prohibited from requiring an insurer to comply with its licensing requirements before insuring a risk located in that state. Again, the court declines to read into a statute that was carefully crafted, a prohibition that was not clearly and explicitly included by Congress.

To support their position, defendants call the court's attention to an excerpt from the *Liability Risk Retention Act of 1986: Implementation Report* prepared by the United States Department of Commerce in September of 1987. Although the Department of Commerce is not charged with administering the Act, Congress mandated the preparation of this report to address the implementation of the Liability Risk Retention Act of 1986. With respect to purchasing groups, the Secretary of Commerce concluded that "the Act is not working as well as intended and that some modification of the Act is necessary if it is to serve its purposes more effectively." *Report* at ES–6. More specifically, the Secretary stated that:

> [t]he basic problem regarding purchasing groups is whether purchasing groups and their insurers are subject to multistate or single state regulation. The Act is unclear on this issue and the states have differed in their interpretation with some states concluding that every state in which a purchasing group has members has regulatory authority while others believe that such authority lies solely with the state in which the purchasing group is domiciled or has its principal place of business.

*Report* at ES–3. While recognizing, on the one hand, that state regulators are justifiably concerned that they lack sufficient information about purchasing group insurers to be able to prevent financial and other commercial abuses, the Secretary was concerned, on the other hand, that imposition of multiple states' regulatory requirements would be burdensome to the point of making it virtually impossible for purchasing groups to operate. Cognizant of the dilemma, the Secretary recommended solutions which would reduce regulatory burdens on the insurers of purchasing groups and, at the same time, increase the ability of state regulators to protect the public from unsound financial practices and commercial abuses. In essence, the Secretary recommended that purchasing groups be treated more like risk retention groups.

■ Defendants want the court to take judicial notice of the report prepared by the Department of Commerce. They state:

> The report analyzes the language, purpose and legislative history of 15 U.S.C.A. § 3903, concludes that the Act preempts state laws such as that relied upon by the Florida department here, and concludes further that the congressional purpose will be defeated if such laws are enforced. The Department of Commerce analysis is correct and should be followed.

*See* document 21, pp. 2–3. While the court agrees that the report suggests that congressional purpose will be defeated if multiple states' licensing and regulatory laws are enforced, the court cannot agree that the report states that the Act, as written, actually preempts state laws such as that relied upon by the Florida Department here. Further, even if the court could so agree, the interpretation of the Department of Commerce—an agency charged *not* with the administration or implementation of the Act but with *reporting* on how the Act was being implemented by the states—would not be entitled to deference. *See Swanco,* 879 F.2d at 358 (where the Commerce Department is not charged with administering the Act, but merely has responsibility under the Act to report on *its* implementation, deference is not warranted). Eleventh Cir-

cuit law does not hold to the contrary. Thus, while the report may provide valuable information and insight concerning the Act, it does not convince this court that the statute preempts the Florida licensing statutes at issue in this case.

The court is aware of only two circuit courts that have addressed the same or a related issue concerning the Act. Both cases support this court's refusal to broadly construe the preemptions contained in section 4 of the Act. In *Swanco Insurance Company—Arizona v. Hager,* 879 F.2d 353 (8th Cir.1989), when faced with the question of whether the state of Iowa could impose its licensing requirements upon an Arizona insurance company providing coverage to a purchasing group domiciled in Arizona but having members in Iowa, the Eighth Circuit concluded that both the language and the structure of the Act supported the position that neither section 4(f) nor any other section of the Act preempts a nondomiciliary state from imposing its licensing requirements upon insurers who wish to sell to purchasing group members in that state. In *Insurance Company of the State of Pennsylvania v. Corcoran,* 850 F.2d 88 (2d Cir.1988), the Second Circuit considered the somewhat different but related question of whether the express preemption provisions of section 4(a) could be broadly construed to prohibit a state from applying its policyform and rate regulations to purchasing groups. An analysis of the legislative history and the structure of the Act—including, and especially, the differing schemes provided for risk retention and purchasing groups—led the court to conclude that only those state laws and regulations clearly and explicitly designated in section 4 are preempted. Both cases thus support the conclusion that Florida's licensing laws are not preempted because such laws are not included in the *specific* state laws exempted under the Act.

## CONCLUSION

Having considered the record before it, and for the reasons discussed above, the court has determined that (1) the Liability

Risk Retention Act does not preempt the state licensing laws that are at issue in this case, and (2) plaintiff is entitled to a permanent injunction, enjoining defendants from further violations of such laws. Although it is premature to rule on plaintiff's claims for civil penalties, the court finds that there is no just reason for delay of final judgment as to plaintiff's claims for declaratory and injunctive relief. Accordingly, it is ORDERED:

1. It is DECLARED that sections 627.-949, 624.401(1), 627.918, and 626.901(1) of the Florida Statutes are not preempted by the Product Liability Risk Retention Act of 1981, as amended by the Liability Risk Retention Act of 1986, 15 U.S.C. §§ 3901–3906.

2. Defendants are hereby PERMANENTLY ENJOINED from soliciting or transacting, or aiding the transaction of, the business of insurance in Florida in violation of the above statutes.

AFFIRMED.