## GARAGE SERVICES AND EQUIPMENT DEALERS LIABILITY ASSOCIATION OF AMERICA, INC., et al. Plaintiffs,

### v.

### Edward J. HOMES, in his official capacity as Secretary of the Public Protection and Regulation Cabinet, et al. Defendants.

### Civ. A. No. 94–11.

United States District Court,
E.D. Kentucky,
Frankfort.

Nov. 21, 1994.

Christopher M. Hill, McBrayer, McGinnis, Leslie & Kirkland, Frankfort, KY, for plaintiffs.

Dennis G. Howard, II, Atty. General's Office, Suetta W. Dickinson, Kentucky Dept. of Ins., Judith G. Walden, Kentucky Dept. of Housing, Buildings & Const., Frankfort, KY, for Edward J. Holmes.

Dennis G. Howard, II, Atty. General's Office, Judith G. Walden, Kentucky Dept. of Housing, Buildings & Const., Frankfort, KY, for Charles A. Cotton, Dennis L. Decker.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This action is before the Court upon the parties' cross motions for summary judgment. [Record Nos. 15, 23]. The plaintiffs filed this petition for declaratory judgment seeking a determination that the Liability Risk Retention Act, 15 U.S.C. §§ 3901–3906, preempts and supersedes 815 KAR 30:010, § 1. This matter has been fully briefed and is ripe for consideration.[1]

## FACTUAL BACKGROUND

The plaintiff, Garage Services and Equipment Dealers Liability Association of America, Inc. [Garage Services], a risk purchasing group authorized and operating pursuant to the authorization of the Liability Risk Retention Act, 15 U.S.C. §§ 3901–3906, is an insurance purchasing group that provides liability insurance to propane dealers and others in forty eight (48) states, with the State of Kansas and the Commonwealth of Kentucky as the exceptions. The remaining plaintiffs are propane dealers in Kentucky who wish to purchase their liability insurance through Garage Services. The plaintiffs have brought the instant petition for declaratory judgment

---

1. The National Risk Retention Association has filed an amicus curiae brief in support of the plaintiff's motion for summary judgment. [Record No. 25].

against Edward J. Holmes, in his official capacity as Secretary of the Public Protection and Regulation Cabinet, Charles A. Cotton, in his official capacity as Commissioner of the Kentucky Department of Housing, Buildings and Construction and Dennis L. Decker, in his official capacity as Kentucky State Fire Marshal. The plaintiffs contend that the federal Liability Risk Retention Act preempts a recently promulgated Kentucky regulation—815 KAR 30:010, § 1—which provides that licensed propane dealers may only demonstrate financial responsibility for licensure purposes by means of liability insurance purchased from an insurance company authorized to do business in Kentucky. The term "authorized" insurer means one holding a certificate of authority issued by the Kentucky Insurance Commissioner to transact business in Kentucky. KRS 304.1–100(1).

Garage Services purchases insurance for its members from Homestead Insurance Company of Hoboken, New Jersey [Homestead]. Homestead is not an authorized carrier in the Commonwealth of Kentucky as defined in KRS 304.1–100(1). The plaintiffs contend that Homestead has capital and surplus in excess of Kentucky's requirements for an authorized carrier. Homestead is, however, qualified as a "surplus lines carrier" in Kentucky.

Kentucky has determined that insurance purchased through Garage Services is not acceptable as proof of financial responsibility because the insurance was not provided by an "authorized" carrier. The plaintiffs contend that as a result of this decision, propane dealers in Kentucky have been forced to purchase inferior insurance than that provided by Homestead and one dealer has been unable to obtain any liability insurance.

The plaintiffs argue that 815 KAR 30:010, § 1 is preempted by the federal Limited Liability Risk Retention Act which prohibits states from discriminating against purchasing groups pursuant to 15 U.S.C. § 3903(a)(8). The defendants, on the other hand, maintain that Kentucky may establish requirements as to financial responsibility for purchasing groups, pursuant to 15 U.S.C. § 3905(d). Additionally, the defendants contend they have not discriminated against Garage Services.

## DISCUSSION

The issue before the Court is whether 815 KAR 30:010, § 1, which specifies the manner by which propane dealers may provide financial responsibility, is preempted by the federal Liability Risk Retention Act, 15 U.S.C. § 3901–3906.

A.  *History of the Liability Risk Retention Act.*

In 1981, Congress enacted the Product Liability Risk Retention Act, Pub.L. No. 97–45, 95 Stat. 949 [1981 Act]. The 1981 Act was Congress' response to problems business had encountered in obtaining product liability coverage: dramatic increases in premiums and in some cases inability to obtain coverage at any price. The 1981 Act attempted to redress the crises by allowing businesses to purchase insurance at more favorable rates by either forming self-insurance pools called risk retention groups or purchasing groups [2]. Risk retention groups are formed for the purpose of self-insurance, while purchasing groups purchase liability insurance on a group basis from an existing insurer. Congress intended to reduce the cost and increase the availability of product liability insurance and to preempt certain state laws that prohibited or hindered the formation of these groups. *Swanco Ins. Co.—Arizona v. Hager,* 879 F.2d 353, 354 (8th Cir.1989).

The 1981 Act was amended by the Liability Risk Retention Act of 1986, Pub.L. No.

---

**2.**  A purchasing group is defined under the Act as any group which:

(A) has as one of its purposes the purchase of liability insurance on a group basis;  (B) purchases such insurance only for its group members and only to cover their similar or related liability exposure, as described in sub-paragraph (C);  (C) is composed of members whose businesses or activities are similar or related with respect to the liability to which members are exposed by virtue of any related, similar, or common business, trade, product, services, premises, or operations;  and (D) is domiciled in any State.

15 U.S.C. § 3901(a)(5).

**1304**

99–563, 100 Stat. 3177 (1986) [the 1986 Amendments], to expand the scope of preemption to enable risk retention and purchasing groups to provide not only product liability insurance but all types of liability insurance. The 1986 Amendments also include provisions dealing with the permissible scope of state regulations of risk retention and purchasing groups. *Id.* The extent of the Act's preemption is the issue before this Court.

### B. *Preemption.*

■ The 1981 Act created two separate distinct alternatives for the self-insurance pools: risk retention groups and purchasing groups. *Swanco,* 879 F.2d at 357. Congress considered but rejected the creation of a comprehensive federal regulatory scheme for purchasing and risk retention groups. *Id.* (citing H.R.Rep. No. 190, 97th Cong., 1st Sess. 6–7, *reprinted in* 1981 U.S.Code Cong. & Admin.News 1432, 1435; *Home Warranty Corp. v. Caldwell,* 777 F.2d 1455, 1471–72 (11th Cir.1985), *cert. denied,* 479 U.S. 852, 107 S.Ct. 183, 93 L.Ed.2d 118 (1986)). Instead, Congress created separate and distinct preemption schemes for the two groups. "These carefully drafted provisions were designed to provide a 'workable legal framework' balancing the traditional authority of the states and the need for purchasing groups to ameliorate the liability insurance crisis." *Id.* (quoting *Insurance Co. of State of Pennsylvania v. Corcoran,* 850 F.2d 88, 91 (2d Cir.1988) (citing H.R.Rep. No. 865, 99th Cong., 2nd Sess. at 21, 1986 U.S.Code Cong. & Admin.News 5303, 5318)).

The plaintiffs contend that Congress intended broad preemption for both risk retention and purchasing groups. At least two Courts, however, have determined that the scope of preemption differs for these two groups. *See id.* at 357–58 and *Corcoran,* 850 F.2d at 91.

With regard to risk retention groups, the Act broadly preempts "any State law, rule, regulation, or order to the extent that such law, rule, regulation or order would ... make unlawful, or regulate, directly or indirectly, the operation of a risk retention group...." Further subparagraphs then carved out specific exceptions to this broad preemption. *See* 15 U.S.C. § 3902(a)(1)(A–G). "The provision of the 1981 Act applicable to purchasing groups took the opposite approach and avoided sweeping preemption language in favor of designating specific categories of state law to be preempted." *Corcoran,* 850 F.2d at 91. *See also Fla. Dept. of Ins. v. Nat. Amuse. Purchasing,* 905 F.2d 361, 364 (11th Cir.1990) (holding that "both the language and the history of the Act suggest that Congress intended there to be limited preemption of state laws relative to purchasing groups"). The limited extent of the Act's preemption with regard to purchasing groups is set forth in § 3903(a)(1)–(8):

> Except as provided in this section and section 3905 of this title, a purchasing group is exempt from any State law, rule, regulation, or order to the extent that such law or order would—
>
> (1) prohibit the establishment of a purchasing group;
>
> (2) make it unlawful for an insurer to provide or offer to provide insurance on a basis providing, to a purchasing group or its members, advantages, based on their loss and expense experience, not afforded to other persons with respect to rates, policy forms, coverages, or other matters;
>
> (3) prohibit a purchasing group or its members from purchasing insurance on the group basis described in paragraph (2) of this subsection;
>
> (4) prohibit a purchasing group from obtaining insurance on a group basis because the group has not been in existence for a minimum period of time or because any member has not belonged to the group for a minimum period of time;
>
> (5) require that a purchasing group must have a minimum number of members, common ownership or affiliation, of a certain legal form;
>
> (6) require that a certain percentage of a purchasing group must obtain insurance on a group basis;
>
> (7) require that any insurance policy issued to a purchasing group or any mem-

bers of the group be countersigned by an insurance agent or broker residing in that State; or

(8) otherwise discriminate against a purchasing group or any of its members.

15 U.S.C. § 3903(a)(1)–(8). Thus, the 1981 Act did not provide for wholesale preemption of state laws that apply to purchasing groups; only those specifically enumerated laws were preempted.

The 1986 Amendments maintained the separate preemption schemes. Despite the Act's preemptory provisions, the 1986 Amendments, with regard to purchasing groups, provided that "[n]othing in this chapter shall be construed to affect the authority of any State to make use of any of its powers to enforce the laws of such State with respect to which a purchasing group is not exempt under this chapter." 15 U.S.C. § 3903(g). In addition, the 1986 Amendments specifically preserved the States' discretion and authority in specifying acceptable means of demonstrating financial responsibility as a condition for obtaining a license or permit to undertake specified activities:

Subject to the provisions of section 3902(a)(4) of this title relating to discrimination,[3] nothing in this chapter shall be construed to preempt the authority of a State to specify acceptable means of demonstrating financial responsibility where the State has required a demonstration of financial responsibility as a condition for obtaining a license or permit to undertake specified activities. Such means may include or exclude insurance coverage obtained from an admitted insurance company, an excess lines company, a risk retention group or any other source regardless of whether coverage is obtained directly from an insurance company or through a broker, agent purchasing group, or any other person.

15 U.S.C. § 3905(d).

The Kentucky Department of Housing, Buildings and Construction, the state agency charged with licensing propane dealers in Kentucky, has attempted to exercise its authority to establish acceptable means of establishing financial authority by promulgating 815 KAR 30:010, § 1. The plaintiffs argue that this regulation impermissibly discriminates against purchasing groups and therefore violates § 3903(a)(8). Thus, the plaintiffs contend that this regulation is invalid and should not be enforced.

The defendants, on the other hand, maintain that § 3905(d) gives the Department of Housing the authority to require propane gas dealers seeking an LP license to have evidence of financial responsibility from an authorized (i.e., "admitted") insurance company, regardless of whether the coverage is obtained from an insurance company or through a purchasing group. [Record No. 23, p. 8]. The Court agrees. Principles of statutory construction and the legislative history demand that Kentucky be permitted to regulate the financial responsibility standards for propane dealers who wish to purchase their liability insurance through purchasing groups pursuant to 15 U.S.C. § 3905(d).

The Court finds the instant action comparable to *Corcoran, Swanco,* and *National Amusement.* In *Corcoran,* a purchasing group, Nurse Practitioners Professional Liability Purchasing Group, wanted to provide insurance to nurse practitioners in the state of New York through the Insurance Company of the State of Pennsylvania [State of Penn], an insurer authorized to do business in the state of New York. The Superintendent of Insurance of the state of New York advised the purchasing group that it would be required to comply with New York law regarding the policy-form and rate-approval requirements. State of Penn filed an action for declaratory judgment and injunctive relief claiming that the New York laws on policy-form and rate-approval were preempted by the federal Liability Risk Retention Act.

The Second Circuit Court of Appeals rejected the plaintiffs' argument that the House and Senate Reports of the Act indi-

---

**3.** Section 3902(a)(4) sets forth the Act's preemption powers for risk retention groups when a state regulation would discriminate against a risk retention group. The Act provides a similar provision for purchasing groups in section 3903(a)(8).

cate that a whole preemptive effect was intended for purchasing groups. *Corcoran,* 850 F.2d at 92. The court held that "[t]he House and Senate Reports for the 1981 Act thus solidly support the conclusion that only those state laws and regulations specifically designated in [15 U.S.C. § 3903] are preempted." *Id.* The court further noted that nothing in the 1986 Amendments undermines that conclusion. *Id.*

Similarly, in *Swanco,* the Iowa Unauthorized Insurers Act required purchasing groups to be licensed only in the state where the purchasing group was domiciled. Swanco Insurance Company [Swanco], an insurer for the Ugly Duckling Purchasing Group, was not licensed to issue insurance in Iowa. Swanco filed a petition for declaratory judgment and injunctive relief arguing that the federal Liability Risk Retention Act preempted the Iowa Commissioner's authority to require an insurer providing coverage to purchasing groups members to comply with Iowa's licensing laws. The court examined the Act's distinction between purchasing groups and risk retention groups regarding preemption. The *Swanco* court, citing *Corcoran,* held that, except for the explicitly preempted laws set forth in § 3903(a), Iowa was free to apply its laws in a non-discriminatory manner.[4]

Finally, in *National Amusement,* the National Amusement Purchasing Group [National Amusement] was a Missouri corporation whose members included several Florida businesses. National Amusement purchased insurance for its members through the Bel-Aire Insurance Company [Bel-Aire], a Missouri insurer authorized by the Missouri Division of Insurance to sell insurance in Missouri.

The purchasing group wanted to provide insurance coverage, through the Bel-Aire policies, to business located in Florida. The Florida Department of Insurance instituted an action against the purchasing group arguing that Florida law required the purchasing group to purchase insurance through (1) a risk retention group certified in the United States; (2) an authorized insurer; or (3) an eligible surplus lines carrier. Bel-Aire met none of those qualifications. The purchasing group argued that the federal Liability Risk Retention Act preempted this Florida statute thereby exempting purchasing groups from said law.

Like the courts of appeal in *Corcoran* and *Swanco,* the Eleventh Circuit Court of Appeals compared the federal Liability Risk Retention Act's broad preemption provision for risk retention groups with the narrow preemption provision for purchasing groups. *National Amusement,* 905 F.2d at 363–64. The court rejected the purchasing group's argument that the federal Liability Risk Retention Act preempted state laws which attempted to regulate purchasing groups with regard to licensing requirements. The court held:

> [Section 3903(a)(2) ] expressly preempts only those state laws that prohibit insurers from offering purchasing groups "advantages, based on their loss and expense experience." 15 U.S.C. § 3903(a)(2). [Section 3903(a)(3) ] preempts only those state laws which prohibit purchasing groups from purchasing insurance which reflects such advantages. Neither section purports to exempt purchasing group insurers from being licensed or otherwise authorized in the state where a purchasing group member resides. While it may be correct to say that preemption of Florida's licensing law would enhance the ability of purchasing groups to operate, *there is not one section in the limited list of preempted laws that explicitly preempts a state's licensing laws as they apply to purchasing groups.* There is little doubt that a non-domiciliary state's licensing laws, if applicable to purchasing group insurers, would burden the ability of insurers to offer purchasing group advantages based on their loss and expense experience. Indeed, the same could be said of many other types of insurance regulations. *Congress did not*

4. This Court questions whether the anti-discrimination provision of § 3903(a)(8) applies with respect to financial responsibility laws as set forth in § 3905(d). Nonetheless, that determination is irrelevant for purposes of the instant action as there has been no discrimination against Garage Services. *See* section B. Discrimination, infra.

*include within its list of preempted laws, however, a section prohibiting laws and regulations which burden the ability of purchasing groups to operate. Congress clearly could have provided for such preemption. Instead, Congress chose to specifically preempt a limited number of state laws affecting purchasing groups, when it simultaneously and in the same Act preempted in broad terms all but a limited number of state laws affecting risk retention groups.* Given Congress's choice, this Court cannot accept the interpretation [the purchasing groups] ask this court to adopt.

*Id.* at 365.

In a very recent case, the Eleventh Circuit Court of Appeals determined that financial responsibility laws, such as 815 KAR 30:010, § 1, are the very type that Congress excepted from preemption in § 3905(d). In *Mears Trans. v. Florida,* 34 F.3d 1013 (1994), the Eleventh Circuit rejected similar preemption arguments made by risk retention groups with regard to a Florida statute which established financial responsibility requirements for for-hire transportation vehicles. The risk retention groups also argued that the Florida statute impermissibly discriminated against risk retention groups. The undersigned finds the analysis in *Mears* applicable to the instant action.

In *Mears,* two risk retention groups challenged amendments to a Florida statute requiring for-hire transportation vehicles to prove financial responsibility by maintaining insurance covering the first dollar of liability per accident up to $30,000 combined single limits. The statute required said insurance to be purchased from "an insurance carrier which is a member of the Florida Insurance Guaranty Association." *Id.* at 1015. The plaintiff risk retention groups argued that the statute violated the anti-discrimination policies of the federal Liability Risk Retention Act. The Eleventh Circuit, reversing the district court, determined that the Florida statute was precisely the type of state law Congress expressly exempted from the preemption provisions of the Liability Risk Retention Act. Further, the court found no evidence of discrimination. The undersigned likewise finds that like the Kentucky regulation, KAR 30:010, § 1, is precisely the type of financial responsibility law that Congress expressly exempted from preemption in 15 U.S.C. § 3905(d); additionally, there is no evidence of discrimination against Garage Services or any other purchasing group.

In determining that the Florida statute was the type Congress expressly exempted in § 3905(d), the *Mears* court, after reviewing the purpose of the Act, determined that

Congress specifically excepted from the Act's preemptive provisions those state laws aimed at assuring the financial responsibility of entities subject to state, county, and city licensure laws. By so doing, Congress evidenced its intent to preserve for the states the authority to utilize financial responsibility laws to protect the public.

*Id.* at 1018. The specific language of § 3905(d) demands this conclusion.

Subsection 3905(d) specifically authorizes the state to "specify acceptable means of demonstrating financial responsibility" as a condition for obtaining a license or permit to undertake specified activities. The subsection further provides that "[s]uch means may *include* or *exclude* insurance coverage obtained from an admitted insurance company, ... a risk retention group, or any other source [regardless of whether coverage is obtained directly from an insurance company or through a broker, agent, purchasing group, or any other person.]" By amending Fla.Stat. ch. 324.031, the Florida legislature specified an acceptable means for owners and operators of for-hire passenger transportation vehicles to demonstrate financial responsibility; this means *includes* insurance coverage obtained from members of the FIGA and *excludes* the first $30,000 of insurance coverage obtained from non-members, including risk retention groups. Thus, Fla.Stat. ch. 324.031 as amended falls squarely within the language of § 3905(d).

*Id.* at 1018.

The undersigned likewise finds that 815 KAR 30:010, § 1, is the type of statute specifically exempted by Congress in § 3905(d). The Kentucky regulation specifies an acceptable means for propane dealers to demon-

strate financial responsibility; this means *includes* insurance coverage obtained from insurers authorized in the Commonwealth of Kentucky, and *excludes* coverage from those not authorized, including coverage provided through purchasing groups. The Act provides that such means may include or exclude such coverage *"regardless* of whether the coverage is obtained directly from an insurance company or through a ... purchasing group...."" 15 U.S.C. § 3905(d).

## C. *Discrimination.*

■ The *Mears* court also rejected the risk retention groups' argument that the financial responsibility law impermissibly discriminated against risk retention groups in violation of § 3905(d). Garage Services similarly contends that 815 KAR 30:010, § 1, is invalid because it discriminates against purchasing groups which is prohibited by § 3903(a)(8).

The Court notes that the anti-discriminatory exception in § 3905(d) applies to risk retention groups, not purchasing groups. Nonetheless, given the anti-discriminatory provision for purchasing groups found in § 3903(a)(8), the Court will consider Garage Services' discrimination argument.

■ Garage Services, asserts that the financial responsibility regulation in question discriminates against purchasing groups because the regulation "has the effect, whether intended or not, of placing obstacles in front of Purchasing Groups, which [ ] are not shared by admitted carriers, [and] violates the anti-discrimination provisions of the [Act]." [Record No. 16, p. 21]. The undersigned finds no discrimination. The regulation does not single out purchasing groups for preclusion; the financial responsibility law applies equally to all insurers, purchasing groups and risk retention groups. The financial responsibility requirements are a legitimate and rational exercise of a state's traditional authority to act in the public interest; the requirements are designed to provide members of the public injured by propane accidents adequate protection. *See id.* at 1018. (finding no evidence of discrimination against risk retention groups in the Florida statute where the amendment did

not single out risk retention groups for preclusion; the preclusion was narrow; and the financial responsibility requirements were a legitimate and rational exercise of the state's traditional authority to act in the public's best interest). Hence, the undersigned finds that 815 KAR 30:010, § 1, is aimed at protecting the public, not at discriminating against purchasing groups; therefore, it is exactly the type of state regulation that Congress had in mind when it added § 3905(d) to the federal Liability Risk Retention Act in 1986. If a state, as Florida did in *Mears,* may enact financial responsibility laws for risk retention groups which exclude coverage if the risk retention groups is not an authorized insurer within that state without violating the anti-discrimination principles of the Act, then by the same analysis, a state may, without engaging in prohibited discrimination establish financial responsibility laws which require that an insurer providing liability coverage to a specific category of insureds be licensed in that state, even where purchasing groups wish to purchase insurance for a particular groups of insureds, without engaging in prohibited discrimination.

## D. *Remaining claims.*

The plaintiffs contend that should the undersigned determine that the plaintiffs have failed to establish that 815 KAR 30:010, § 1 is preempted by the federal Liability Risk Retention Act or that the regulation is discriminatory, then the defendants' motion for summary judgment should nonetheless be overruled as Garage Services is entitled to prove that the state's action, as applied, violates 15 U.S.C. § 3903(a). As the undersigned determined above that financial responsibility laws are not the type of state laws preempted by § 3903(a), the plaintiffs' request must be denied.

## CONCLUSION

Having given due consideration to the parties' well-prepared briefs, along with brief of the amicus curiae, the Court finds that the financial responsibility licensing requirements found in 805 KAR 30:010, § 1, are not preempted by the federal Liability Risk Retention Act because licensing requirements

are not included in the list of preempted laws in § 3903(a) of the Act. Further, the Act specifically provides that a states' authority to specify acceptable means of demonstrating financial responsibility as a condition for obtaining a license are not preempted. 15 U.S.C. § 3905(d). Finally, the regulation does not discriminate against purchasing groups, but is aimed at protecting the public's welfare.

Accordingly,

**IT IS HEREBY ORDERED:**

(1) That the plaintiffs' motion for summary judgment [Record No. 15] be, and the same hereby is, **OVERRULED.**

(2) That the defendants' motion for summary judgment [Record No. 23] be, and the same hereby is, **GRANTED.**

(3) That this matter be, and the same hereby is, **DISMISSED AND STRICKEN FROM THE ACTIVE DOCKET.**